UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LORETTA GREASLEY, As Executor
of the Estate of Michael J. Marranco,

                    Plaintiff,

    v.

UNITED STATES OF AMERICA,

                    Defendant.

**DECISION AND ORDER**
15-CV-642-A

---

This action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, alleges that negligence and medical malpractice on the part of the U.S. Department of Veterans Affairs (the "VA") proximately caused personal injuries of Michael J. Marranco.  On September 9, 2013, Mr. Marranco, an 87-year-old who suffered from dementia, was admitted to the Batavia, New York, VA Medical Center (Pine Lodge) for a period of respite care so that a family care giver could have surgery and recuperate.  Within the next week, however, Mr. Marranco fell two times while at Pine Lodge and required treatment at the Buffalo VA Medical Center.  After experiencing pain that was allegedly greatly exacerbated by injuries caused by the two falls, he suffered a pulmonary embolisim and passed away on September 17, 2013.

A non-jury trial of the plaintiff Estate's negligence and medical malpractice claims is scheduled to begin on August 20, 2019.  The action is presently before the Court on a motion filed by the United States pursuant to Fed. R. Civ. P. 37(c) to preclude certain expert opinion testimony during the trial.  The VA argues that recent steps by the plaintiff to offer expert opinion testimony that one of the two falls at Pine

Lodge caused a lumbar compression fracture suffered by Mr. Marranco are untimely, and that the new expert opinion testimony should be precluded. For the reasons stated below, the Court agrees and grants the VA's motion to preclude the new opinion testimony at trial.

## BACKGROUND

The plaintiff Estate intends to call Dr. Jeremiah D. Schurr, M.D., MHS, an emergency physician, to testify primarily about applicable standards of care and how the treatment of Mr. Marranco by the VA after the two falls at Pine Lodge failed to meet those standards. During a pretrial deposition on May 24, 2017, Dr. Schurr testified in response to questioning by the VA's counsel as follows:

> Q. And that the MRI revealed compression fractures, correct?
>
> A. Yes.
>
> Q. You would agree that it is impossible to determine when those compression fractures occurred?
>
> A. Yes.
>
> Q. By simply viewing the MRI, correct. And you will also agree that Mr. Marranco was experiencing considerable pain in his lumbar spine prior to his first fall at the facility on September 10, 2013?
>
> A. Yes.

Dkt. No. 57, pp. 19-20[1]. The VA contends that particular testimony establishes that Dr. Schurr admits that he is unable to determine whether Mr. Marranco's lumbar

---

[1] "MRI" denotes a magnetic resonance imaging scan.

compression fracture occurred before he arrived at Pine Lodge on September 9, 2013.

The plaintiff Estate, on the other hand, contends Dr. Schurr's testimony meant only that he was not basing his opinion that one of the falls at Pine Lodge caused the fracture *only* on the MRI, and that other medical information supports his opinion that the second fall at Pine Lodge likely caused the compression fracture. Neither Dr. Schurr's expert report dated December 28, 2016, nor his May 24, 2017 deposition testimony disclosed that opinion, however.

Dr. Schurr's deposition testimony was later addressed when the VA moved for summary judgment on the theory that plaintiff Estate lacks legally-sufficient evidence to establish that Mr. Marranco's falls at Pine Lodge caused Mr. Marranco's lumbar compression fracture. Mr. Marranco had fallen on stairs at home within days of his admission to Pine Lodge, and had fallen at home before that fall, but was reportedly asymptomatic. *See* Dkt. No. 31, p. 2; Dkt. No. 57, pp. 7, 34.

The presiding Magistrate Judge noted in a January 18, 2018 Report and Recommendation on the VA's summary judgment motion:

> Dr. Schurr[] admi[tted] during his deposition that he could not determine which of Mr. Marranco's falls resulted in the fracture.

Dkt. No. 31, p. 6. The Magistrate Judge then explicitly rejected an attempt by the plaintiff Estate to rehabilitate Dr. Schurr's testimony that it was impossible to determine when the compression fracture occurred by contending Dr. Schurr meant only to testify that he could not tell which of the two falls at Pine Lodge caused the

3

fracture. *Id.* The Estate did not object to these recommended findings of the Magistrate Judge pursuant to Fed. R. Civ. P. 72(b)(2) and the corresponding Local Rule. It did not even raise the contention that Dr. Schurr had expressed an opinion on when the lumbar fracture occurred when it opposed the VA's objections to the Report and Recommendation on the summary judgment issues. *See* Dkt. Nos. 39, 41, pp. 5-6.

On June 18, 2019, more than two years after the Court's deadline for the disclosure of expert reports, *see* Dkt. No. 11, ¶ 2, plaintiff Estate served a supplemental report of Dr. Schurr's opinion. In it, Dr. Schurr states the compression "fracture occurred as a result of one of the [two] falls at Pine Lodge, 'likely' the second one." Dkt. No. 60-3, p. 60. Dr. Schurr cites no new information about when the fracture occurred. Dkt. No. 60-3, pp. 60-66.

## DISCUSSION

Rule 37 of the Federal Rules of Civil Procedure provides, in pertinent part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Under Rules 26(a)(2)(E), 26(a)(3)(B), and 26(e), plaintiff Estate was required to disclose its expert witnesses' opinions on the schedule set by the Court. In this case, the Court's Case Management Orders scheduled the last date for disclosing expert reports as February 27, 2017, Dkt. No. 11, ¶ 2, and the last date for expert depositions as June 20, 2017.

4

The Case Management Orders did not set a deadline for supplementing expert reports or deposition testimony, but a party's "duty to supplement arises when [an] expert subsequently learns of information that was previously unknown or unavailable." *Lewis v. FMC Corp.*, 786 F.Supp. 2d. 690, 705 (W.D.N.Y. 2011). In this case, no new information triggered Dr. Schurr's modification of his opinion. The witness purports to rely only upon "Mr. Marranco's clinical history, progression, and rapid decompensation — in addition to the MRI . . . ," Dkt. No. 60-3, p. 66, all of which he relied upon in his original report. *Id*. at pp. 7-12. And because Dr. Schurr's supplemental report does not rely on new information that was previously unknown or unavailable to him, it is not a permissible supplement under Rule 26. *See Stitts v. Dairy Farmers of North America*, No. 2:16-cv-287, 2019 WL 3298537 *4-5 (D. Vt. July 23, 2019). "[E]xperts are not free to continually bolster, strengthen, or improve their reports by . . . researching the issues they already opined upon, or to continually supplement their opinions." *Id*. (quoting *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011)).

Plaintiff Estate attempts to excuse its failure to try to supplement Dr. Schurr's opinion sooner by claiming that it only became necessary to do so after the VA misrepresented his opinion. That excuse is without merit. Dr. Schurr's initial report did not address when the lumbar fracture occurred. And, as the presiding Magistrate Judge found in his January 18, 2018 Report and Recommendation, Dkt. No. 31, Dr. Schurr's deposition testimony was an admission, ambiguous though it may have

been[2], that it is impossible to determine which of Mr. Marranco's various falls resulted in the fracture. Plaintiff was obliged under Fed. R. Civ. P. 72 to object to that recommended finding in the Report and Recommendation if plaintiff considered the finding inaccurate, but it failed to do so. The plaintiff did not even argue that Dr. Schurr thought that Mr. Marranco's lumbar fracture was caused by one of the falls at Pine Lodge in opposition to the VA's objections to the Magistrate Judge's recommendation to deny summary judgment based upon the legal insufficiency of plaintiff's evidence of causation. *See* Dkt. Nos. 39, 41, pp. 5-6. The so-called misrepresentation by the VA was obvious more than 18 months ago. Given plaintiff's repeated failure to clarify Dr. Schurr's views when it should have done so, it is hard to take seriously plaintiff's claims that the VA's counsel misrepresentations of Dr. Schurr's opinion about the cause of the Mr. Marranco's lumbar fracture prompted the supplemental report.

Moreover, it appears to the Court that the opinion testimony of Dr. Schurr about when Mr. Marranco's lumbar fracture occurred is not of critical importance to the plaintiff Estate's case. Dr. Schurr is primarily a liability witness, and assuming that negligence or malpractice on the part of the VA are found, the most important evidence of damages will be testimony of those who observed Mr. Marranco before and after the falls and the evidence in the clinical medical records. Even if Mr.

---

[2] The VA's counsel certainly made Dr. Schurr's deposition testimony ambiguous when counsel responded to Dr. Schurr's concession that it is impossible to tell when the fracture occurred by saying: "By simply viewing the MRI, correct." *See* Dkt. No. 57, pp. 19-20.

Marranco's lumbar fracture was from a previous fall and had gone undiagnosed, the Estate will be entitled to recover for Mr. Marranco's pain and suffering that it proves was a proximate result of exacerbation of his various conditions due to negligence or malpractice on the part of the VA.  Dr. Schurr's newly-clarified opinion would do only a little to sort out the sources of Mr. Marranco's pain.  The Court finds that precluding the new opinion testimony is not an excessive hardship for the plaintiff in light of the course of the prior proceedings in the case.

Similarly, although the VA argues that it would need a continuance to re-depose Dr. Schurr in light of his new opinion on causation of the lumbar fracture, it seems to the Court likely that testimony would be a minimally-productive dry run of the expert's cross examination at trial.  Dr. Schurr's late new opinion is not so important that the parties' trial preparations should be re-ordered to accommodate it.

## CONCLUSION

For the foregoing reasons, the motion of the United States pursuant to Fed. R. Civ. P. 37(c) to preclude expert opinion testimony in a June 18, 2019 supplemental report of Dr. Jeremiah D. Schurr, M.D., MHS, during the trial of this action is granted.

**IT IS SO ORDERED.**

      *S/Richard J. Arcara*
      HONORABLE RICHARD J. ARCARA
      UNITED STATES DISTRICT COURT

Dated:  August 5, 2019